## HUGH THOMPSON v. STATE OF NEBRASKA.

FILED OCTOBER 22, 1909.   No. 16,276.

1. **Criminal Law:** EVIDENCE. Where, in a criminal prosecution, the evidence of the state, if believed by the jury, is sufficient to sustain the verdict, the fact that the evidence is somewhat conflicting will not require the supreme court to set aside the judgment.

2. ――――: WITNESSES: CREDIBILITY: QUESTION FOR JURY. Conflicting statements made by a witness at different times are matters to be considered by the jury in determining his credibility, and are not for the consideration of the court.

3. ――――: INSTRUCTIONS. It is not error to refuse to give an instruction stating a proposition of law which is substantially covered and included in an instruction already given.

4. ――――: ――――. Where the evidence shows that the accused is either guilty of the offense charged, or not guilty of any offense whatever, the trial court is not required to give an instruction on the lower degree of crime included in the definition of such offense.

ERROR to the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*J. E. Leyda,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

BARNES, J.

Hugh Thompson, hereafter called the defendant, was convicted of the crime of robbery from the person, and was sentenced by the district court for Richardson county to serve a term of three years in the state penitentiary. To reverse that judgment he has prosecuted error to this court.

1. His first contention is that the verdict is not sustained by sufficient evidence. We have read the bill of exceptions with great care, and find that the testimony of the complaining witness is clear as to the fact of the

robbery, and that he positively identified the defendant
as the man who robbed him.   It also appears that he is
corroborated by one John Hoppe, who was with him at
the time the robbery occurred.   The evidence for the
prosecution discloses that the prosecuting witness and
his companion Hoppe, at about the hour of 11 o'clock
P. M. of the day of the robbery, were on their way to
Hoppe's home in Falls City, where they intended to spend
the night; that they were approached by the defendant
and another, and after some conversation they all started
to the Burlington and Missouri depot; that on the way
the prosecuting witness asked for a match with which to
light his pipe; that the defendant produced a match, and
held his coat as a wind shield, and the witness placed his
head inside the shield to light his pipe, when he was
struck on the head by the defendant, was knocked down,
and two silver dollars, which he had exposed to the de-
fendant's view when he took out his pipe and tobacco,
were taken from him.   While it appears that all of the
parties had been drinking intoxicating liquor to some
extent, and that Hoppe was somewhat intoxicated, yet he
and the complaining witness both seemed to have a pretty
clear comprehension of what occurred.   It was also shown
that the defendant wore but one coat, which was an
overcoat, although it was then the latter part of Decem-
ber; that he had a mark or abrasion on his face which
was quite noticeable.   These were matters which were
observed by several witnesses, who were thus enabled to
identify him.   Other witnesses testified that they saw
the defendant and his companion at a restaurant, about
the saloons, and on the streets of Falls City on the even-
ing in question shortly before and soon after the robbery
occurred.   This evidence, if believed by the jury, was
sufficient to sustain the verdict.   On the other hand, the
defendant and his companion denied the robbery, testi-
fied that they did not see the prosecuting witness prior
to the time he complains of having been robbed, and did
not see him or know him at all until the following day,

and after they were arrested and confined in jail on the charge in question. They also testified that they did not arrive in Falls City until about 9 o'clock P. M. on the day the offense was committed; that they boarded a freight train at about 12 o'clock that night and went to Hiawatha, Kansas, returning the next morning to Falls City. It will thus be observed that, according to their own statements, they were in Falls City when the robbery was committed, and so the only conflict in the evidence relates to the question of the identity of the person who committed the offense. The jury having resolved that controversy against the defendant, the verdict should not be set aside for want of evidence to sustain it.

2. It is strenuously contended that the evidence of the prosecuting witness is not to be believed for the reason that on the preliminary examination he stated that he first saw the defendant in Falls City about 4 o'clock in the afternoon, or before dark, on the day of the robbery, while on the trial in the district court he testified that he first saw the defendant late in the evening of that day. The answer to this contention is that these apparently conflicting statements were for the consideration of the jury in determining the credibility of the witness, and do not authorize the court to set aside the verdict.

3. It is further insisted that the effect of the evidence of the complaining witness is destroyed by his statement that the defendant held a match for him in his left hand, and struck him on the right side of the head with his right hand. It appears from the record that the witness did not see just how or by whom the blow which knocked him down was delivered. This was also a question affecting the credibility of his testimony which the jury alone had the right to determine, and is not a matter for the consideration of the court.

4. Defendant also assigns error for the refusal of the trial court to give the following instruction: "You are instructed that, if you believe any witness has wilfully sworn falsely to a fact in respect of which he cannot be

presumed liable to a mistake, you may give no credit to any alleged fact depending upon his statement alone." It appears from the record that the court instructed the jury on this point as follows: "The jury are the sole judges of the credibility of witnesses, and, if the jury find that any witness has testified falsely as to any material fact in the case, you are at liberty to reject and disbelieve all of his testimony." This instruction is, in substance, the same as the one refused, and therefore the refusal was not prejudicial error.

5. Defendant further contends that the trial court erred in failing to instruct the jury on the question of an alibi. It is a sufficient answer to this contention that no such defense was interposed by the defendant, and there is no evidence in the record tending to sustain such a defense.

6. Finally, it is urged that the district court erred in failing to instruct the jury that they might find the defendant guilty of larceny only. To our minds this did not constitute error. In this case the defendant was either guilty of the crime charged, or not guilty of any offense whatever. No facts were shown and no evidence was introduced which would justify the court in giving such an instruction. Where, in a criminal prosecution, there is no evidence tending to prove the commission of a lower offense than the one charged, and the testimony shows that the accused is either guilty of the higher offense, or not guilty of any crime, it is unnecessary for the court to instruct on a lesser offense which may fall within the definition of the crime charged. 12 Cyc. 640.

After a careful examination of the record, we find ourselves unable to reverse the judgment without invading the province of the jury. While it is to be regretted that so severe a punishment must be inflicted for so small an offense, one which may have been committed by the defendant while he and his companions were, to some extent, under the influence of intoxicating liquor, yet that is a matter for executive clemency, and for which the courts are powerless to grant relief.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.